Marshall, you may call the next case. Your Honor, this case will not proceed at 16-1102. The people of the State of Illinois funded appellate in the name of R.C. Ellis, Appellant and Appellant. On behalf of the Attorney General, Mr. Kennedy, and on behalf of the respective attorneys, Ms. Sally Ann Swenson. Thank you, Mr. Albertson. On behalf of the appellant, you may proceed. Thank you, Your Honor. May it please the Court, Counsel. As indicated, my name is Kevin Halverson, and my office represents Merritt Gaciarz, the appellant in this case. Is that how you pronounce it? Yes, I believe it's Gaciarz. I even butcher it myself. I'd like to begin my argument with what we consider to be the strongest issue in Mr. Gaciarz's case. The facts presented by the State were insufficient for the trial court to find the defendant guilty beyond a reasonable doubt of any offenses. The State's argument and the trial court's findings are premised on how an ad, a text message, or conversation may be interpreted and what it possibly could mean. Speculation alone about what Mr. Gaciarz, Gacier, understood of the facts is insufficient. The facts presented at the trial never proved beyond a reasonable doubt that sexual contact with a minor was intended by Mr. Gaciarz. Now, does that tie into your argument that the minor never really truly existed? Yes, it does. Is it an absolute requirement under the law that the minor be, the way the statute is phrased, somebody who's actually in existence? If you look at the charges and the way the charges are written and the statute itself, the indictment, count one knowingly attempted to obtain by any means another person under the age of 18 years of age, knowing that minor would engage in commercial sexual activity, there was no abort force, and that the minor was under 17 years, and that the defendant agreed to pay money for an act with a minor under the age of 17. It was an attempt, which is a substantial step toward, correct? Correct, but our statute and, in this case, and the indictment say attempt to obtain a person, directly attempt to obtain a person, not the general attempt statute that might be used in a burglary case, for instance, where the attempt, you have the two statutes, the attempt statute and the burglary statute, and the general substantial steps towards the commission of that offense. These statutes and these indictments specifically, Your Honor, say that the attempt has to be to solicit a person. But you could still be found guilty of an attempt if you took a substantial step toward that activity, but never got to that activity, correct? Correct. And so why is this different from here? As I said, because the distinction, I think, is the fact that the statute and the charge says that he attempted to obtain a person. A person. It didn't say he attempted to obtain a person, did it? Well, in his mind, he was attempting to obtain an 18-year-old brunette person. Yes, that's correct. That's not how she was described in the text messages. But it's how she was described in the ad. Okay. Important facts here are what Mr. Gassier understood and what he knew. If he only had that ad and he traveled to wherever this location was, I agree with you. But something happened after the ad. Something. And there was a text message that he initiated, and it was followed up with certain descriptions. Yes, it was, Justice Hutchinson. And I know that. He's taller. As it must be. That's important facts. And a very easygoing. Correct. But what you have to understand about Mr. Gassier, and when we talk about those text messages, is his limited understanding of the English language. That was evident to the trial court by the fact that he required a Polish interpreter throughout, and it was also evident to the officers. When they searched his phone after they arrested him, only two text messages on that phone were in English, this one and one other text message. Everything else was in Polish. Also interesting about the phone, when looking at the attempt of Mr. Gassier, is the fact that there were no other communications or conversations about minors, no other communications or conversations with minors or attempts to obtain minors. There was no child pornography on his phone, no attempts to access child pornography or any pornography of any kind. All factors that would have been argued as towards his subjective attempt, intent to obtain a minor had they been there, but they weren't. Okay. So they couldn't be used in aggravation. That's good for him. The issue, though, is the text said a 14-year-old blonde and a 15-year-old brunette. And there was also reference to no pics because of the age of my girls. How can, I mean, even if he doesn't understand what Y.O. means, and I might even give you that for purposes of this argument, there's a reference to my girls, and there's 14 and 15. What do those things mean in the context of that particular text? Again, it ties back to the ad itself and Mr. Gassier's understanding. Those texts, his response to that text, I got 14, Y.O., B-L-N-D, and 15, Y.O., brunette, is the word, one word, brunette. The same thing that appears in the ad, a brunette woman represented to be 18 years of age. Well, then why does he need a picture? He asked for a picture. He asked for more pictures. The picture in the ad. You can't see her face. Correct. You can barely see her hair. You can see her hair. Not very well. But you can. You see her from the neck down, and she has long brown hair. It's clearly a brunette. And so asking for another picture could merely be asking for another picture so that he could see the face. And because of the age, it could mean that because she's 18. That's what was represented to him in the ad, and that's what he responded to in the text message, only that which was represented to in the ad. Well, what's represented in the ad is minus and then 18, and then some language about cute something. And if you take all of those things together, as I believe the trial court did, he said it was hard for him to come to any other conclusion, that he knew that this was a, that he knew by the time he got there and on his, well, actually on his way when he got there, that he was looking at, my goodness, a 15-year-old brunette. Well, the trial court said that there was no other explanation that he could find for the term yo. The ad itself, though, that minus sign that you're referring to, the officer who created the ad said that he didn't put that in there. That's put in there on the back page indicating the age of the poster. He said that he put in the ad whatever it said in the reference to the age, 18 and a smiley face. Mr. Howison, what do you make of, and I understand the argument about the yo and he didn't respond to that, but when he asked for a picture, didn't the person posing as the girl's mother say, I don't send pics too risky because of my girl's age? He did receive that text, did he not? Yes. Doesn't that bear any issue with him knowing that they were minors? Because of the age, it could be any age, 18, 19. It could be because she meant it because they were her daughters, as they were trying to explain in the state. All right, let me ask you, going back to some of the cases, you're aware of the Wolf case, the Meek case, the Coates case, in which those cases also involved the prosecution of what turned out to be a nonexistent minor, correct? But someone was portraying a minor in those cases, but it was a purported minor. And the case, the one case from Illinois, People v. Patterson, that was a criminal sexual abuse case, and in that case, the defendant was found guilty, even though there wasn't a minor, but it was somebody portraying a minor online. And do you have any... Go ahead. I was saying in the Wolf case, they used a photograph of someone portraying a minor that was sent to the defendant. Do you have any cases you can call attention to in which the court has definitively held that this type of a prosecution involving what turns out to be a nonexistent minor cannot be a public? Judge, I do not, from Illinois. It doesn't appear... It appears that this is a case of first impression on that issue as to whether or not you need a minor. I can just cite to the fact that in the attempt for a sex abuse case, People v. Patterson, a minor was required. And if you look at the IPI for soliciting a minor, a person is required in that general instruction. Is there any foreign authority that would bear on this issue? No. So you're saying even if... As long as there is a photograph of a minor to show, even though the minor has nothing to do with the case and isn't going to be there, that that's sufficient? No, I'm saying... That makes the difference? That they did show a photograph of somebody that was purported to be a minor. It was an undercover officer or an adult female that was portraying the role of a minor. Are you saying that's required? I'm saying that my position is that a person is required or someone portraying a person underage is required based on the plain, clear, and unambiguous language of the statute and the charging documents. So the picture of a purported minor would obviously be relevant to the issue. I think you are going to make sense on that issue. However, we have no cases, as you've alluded to, that definitively establish it's absolutely necessary. So this is a case of first impression, in your opinion, on that issue? Yes. In Illinois, yes. But in all of the other cases that you're aware of, Wolf, Meek, and Cote, there was something, someone, but not the person who was to be engaged. It was just a picture or an imposter. Well, not a minor or somebody portraying a minor. And why would the state, under any circumstances, place a minor in jeopardy as a result of this issue? You don't have to place a minor in jeopardy as a result of this issue. The picture in Wolf was the picture of somebody portraying a minor. It wasn't a minor. It was an adult. So it wasn't the person. And as testified to by Agent Sifferman, when she was younger, she herself portrayed minors in these types of sting operations. We're not saying that you have to put a minor in a position of risk. But the statute requires that there be a person or somebody portraying that person. We have neither here. And by having, by requiring something along that line, it protects the defendant and it makes sense with the way the statute and the charges were written. So you're saying that as a matter of law, he couldn't be convicted in this case. Does that seem to be your position? Yes, because there was no minor and because the facts do not support that he had the intent to solicit a minor. So you have a two-pronged attack. You have the fact that there is no minor in existence would mean that as a matter of law, he couldn't be convicted. But you're also alleging he didn't have sufficient, evidence doesn't establish he had sufficient knowledge to prove this beyond a reasonable doubt. Is that also part of your argument? Correct. Okay. Correct, because even if you find that a minor wasn't necessary, as we alluded in the argument, there still isn't sufficient evidence to show that Mr. Gautier had the intent to solicit a minor. There's no conversation in the hotel room regarding age of a person, just the fact that it's a daughter. You just have the 33 seconds of the tape that was testified to by Agent Sifferman, where she said it was her context and understanding that minors were involved. Nothing specific. And then again, back to the text message, there's nothing specific that shows that Mr. Gautier clearly and unequivocally understood that the ad was now somehow changed to involve minors. Nothing in his response and his understanding based on those responses or his conversation shows that he understood that 14 yo BLND or 15 yo brunette meant anything other than what could be 14 BLND, whatever they are, or 15 brunette. He answered brunette. Brunette was the 18-year-old woman that appeared in the advertisement and was advertised. We didn't know she was 18. A picture was there. The advertisement, the officer indicated that that's what they put into the ad, that it was that in the ad itself where it says young, warm, and ready, smiley face, 18, that's what he put in. He testified that the dash was put in by back page, not him. That indicated the age of the poster. But he testified that he put into the ad itself young, warm, and ready, smiley face, 18, and down below posters age 18. He didn't put anything in the ad and testified that nothing was placed in the ad by him that indicated that this advertisement in any way, shape, or form had anything to do with sex with a minor. He was aware of key words and phrases that could be put in and what they look for when dealing with advertisements that may have sex with a minor involved, but he did not put any of those in there. Because he couldn't have gotten it probably published even on that particular website because they're all very careful. He put in information that would catch someone's attention, correct? That was his purpose in putting that in there. Well, I think his purpose was to catch someone's attention with a photograph of what was purported to be an 18-year-old woman. But the follow-up does not appear to relate to that. And, in fact, at the very end of the text that's issued, the texter says, okay, we're a condom for all. I don't want my daughter catching anything. Is that cool? Okay, no problem. And I want to be safe, too. Right. Mr. Gauthier is 32 years old and considers himself young. So the fact that he's referring to anything young doesn't mean that he's referring to someone that is under the age of 18. He never said anything in any text message or any word of conversation that would lead anybody to believe that he understood unequivocally that this involved a minor. Stating that he's young when he's 32 years old shows his thought process of what young could mean. If you also look at his respondent or his responses, it doesn't seem on this text, he seems to have some control. I like your ad. Do you have more pick? Okay, where do you guys live? I just forgot. Where do you guys live? I would like to spend one hour. And he uses an H for hour. He seems to have control of the language in this text. Well, that H and hour is also in the ad. The ad presents it both ways. But he knows the difference between $100 and $150, which would be the issue here, a half an hour or an hour. Right. And H, the ad itself says $100 donation for HH. Below it says $150 donation for full hour. Right. So he has some control of the language as evidenced by his responses. Correct. Yes. And his response, the language that he uses in his response is all language that comes from the ad, which is for an 18-year-old group ad. I don't have anything to say. Nothing. All right, Mr. Halverson, your time has expired. I'm going to direct you. Thank you. Thank you. Thank you. All right, Ms. Swiss, on behalf of the appellee, you may proceed. Thank you. May it please the Court, counsel, I'd like to just make a couple of quick points about the reasonable doubt argument about his understanding of what was taking place here. First of all, I'd like to make the point that this is unappeal and that the standard of review is to look at it in the light most favorable. So we're looking at reasonable inferences here. And we not only have an ad that is certainly open and open to interpretation, even that that minus sign means less than 18, but more than that, what we have are these texts. Those are the important part of this whole transaction. And it isn't just the Y.O. You have to look at the context that the Y.O. applies in. And the Y.O. comes when they're explaining which girl do you want. Do you want a 14-Y.O. blonde, and blonde is also not spelled out, or a 15-Y.O. brunette without the E at the end. And in that context, Y.O. cannot mean anything else. It certainly can't mean your. It doesn't fit in there. Nothing of that sort. And it certainly goes to look, you have to look at the context of the transaction here. This is a sexual, you know, a money for sex transaction. Certainly they're talking about physical attributes, blonde, how old, female. And this is the only Y.O. has to mean what it means within that context. What about this argument? The investigators put the Y.O. The slang was inserted into their undefined abbreviations into the text. There's no additional confirmation the recipient understands them. And then they argue it's being bootstrapped into an element of the offense. How do you respond to that? Why do we really know that he understood that abbreviation? Well, I responded to that by saying there's another part of that, of the text in conversation. And that's even more, that along with this is certainly very clear, which is where it says that I can't send pictures because that would be too risky due to the girl's ages. I asked him about the immediate response. His response to that is that maybe they're 20, 22, or 18, or something of that sort, and they're her daughters. But risky because risky to send out a picture of a child for sex is what that's talking about. And I think that there's only one reasonable inference from that statement. It's not risky to send out a photo of an adult female. It is risky to send out, much riskier to send out a photo saying for sex of a child. And I think that's the only way that can be read. And so when you read those two in conjunction. And then additionally, we have to look at what happened at the hotel. And that's part of the circumstantial case, and that goes to his comprehension. He was told how to get there. He was told an address. He was told to bring condoms to make sure they were safe. He was told to give some type of password, Papa John's at the door, so that they would know to open it. He followed all these instructions to a T. He just totally showed his comprehension of what was occurring. And I went through this specifically sort of line by line almost in my brief. But every time he texted, he showed comprehension as to what the transaction was about. He answered appropriately to any questions. He asked a few questions himself, which was appropriate to the transaction that he thought was occurring. Everything shows his comprehension down the line, including what happened at the hotel. And when you put that together under a reasonable doubt standard on review, there's no doubt that this circumstantial case certainly was sufficient to prove defendant guilty beyond a reasonable doubt and show that he acted knowingly. What about the argument that as a matter of law, the prosecution cannot stand because the minor never truly existed? Because the minor what? The minor never truly existed. There was no real minor in existence during all this. Well, there is no law in Illinois directly on point. But certainly there is a lot of law in the federal courts, and that's what I've cited too in my brief, as well as other state courts that have determined this. And almost to a T, I think there's an exception maybe in Maryland, I believe I read one, but almost to a T, they all came up with the same response, which is that the criminal act here is the defendant's criminal purpose. And because it's an attempt, he has to take substantial steps towards the completion of what he understands. But that is the criminal conduct. The criminal conduct is not that there be a girl involved. That's not an element of the offense, that there be somebody here that he could complete the offense by or with. The fact that no picture was produced or anything like that, you're saying, is not required? It's not required. And, in fact, that would be, to me, to argue that it would be okay. I mean, I understand the argument that, you know, since it says person, that you need a person. But like I say, the courts have not determined that to be the case in almost any of the cases that I could find. And more than that, we also have, of course, a general attempt statute. And there's a case, People v. Kirchner, in which they look to the general attempt to determine what the attempt meant in terms of, you know, within a statute. And I think that, and that says that impossibility is not a defense. So I think that makes, you know, even a stronger case that that's exactly what this, what the legislature intended, to make the decision he makes that somehow it would be okay and that that's what Wolf, you know, falls upon. If we had a pretend person somewhere, you know, somebody pretending to be the victim, that doesn't make any sense. I mean, because then what you have is really an absurd construction where you still couldn't complete the act. So how would that in any way promote a policy of any sort, that you have to have a person, any person, being, you know, acting as a minor? It doesn't do anything. It doesn't change his subjective intent to complete this sex act with a minor. That's what we're looking at. That's what the crime is. Well, the Ninth Circuit, in fact, said that in that, in Meek's case. It's the fact that his belief, what he believed was not accurate, he was mistaken, is not of any consequence. The fact that he could not succeed in his actual sex with a minor, again, is of no consequence. It's what he intended and what steps he took to get to that point. This is an input offense. This is not the completed offense. So there doesn't have to be. For the completed offense, of course, there's going to have to be something there. So this is an attempt, and attempt is usually determined on the purpose, and the purpose both in count one and in count two, which is the traveling, is that he's traveling or using it knowing what he believes he knows. In other words, knowing what may not be, in fact, true, but which under the circumstances he believes to be true, he is taking substantial steps. He not only prepared for this. He got his condoms. He got the right money. He drove through a snowstorm. He ended up at the right hotel. He did everything he could and made contact. He did everything he could to complete this crime, basically, and the fact that he's acting under a misapprehension of what the true facts are has actually no bearing at all on whether he committed this crime. It really goes to his subjective intent, and that is what's being punished as the criminal conduct in this case. So under our attempt statute, where impossibility is not a defense, and under all the other law that we could find in the other jurisdictions that we've cited in our brief, we believe that that's the proper reading of the statute. Does anyone have any questions on Issues 3 or 4? Otherwise, no. Thank you very much. Thank you. Mr. Helgerson, you may address the floor to everybody. Thank you, Your Honor. Your Honor, he followed all the instructions and did all the things that he was asked to do because what he was doing was soliciting a prostitute. He knew he was soliciting a prostitute. He knew that he was soliciting an 18-year-old brunette prostitute. Of course he's going to do what they tell him to do, say what they tell him to say, when he arrives at a door to get there. That doesn't in any way bolster the argument that he knew that it involved a minor. Well, even if he doesn't understand what the letters Y-O mean, what do 14 and 15 mean in this text? It could mean 14 B-L-N-Ds. It wasn't an S on the end. I don't think it was an S. 14-year-old blonde, and there was no D on the end of brunette, so there was no S. And it said 14 Y-O blonde, B-L-N-D, and 15 Y-O brunette. So it's not going to be 14 blondes. You've got a choice of 14 blondes or 15 brunettes. It could be if he doesn't understand what the letter Y-O means. Well, but he also says picks, which means more than one picture. Who knows the plural of a word? Picks. Somebody uses picks in this. And a lot of things in those text messages are cut short words. And you, for instance, at one point the phrase or the letters A-D-N were put in, in a text message by the officer. And he obviously glossed over that, much like he obviously glossed over Y-O. He didn't ask, well, what does A-D-N mean? What does Y-O mean? He saw brunette. Brunette corresponded to the ad. What the Y-O means, there's nothing that shows that he understood Y-O to mean that. As the Urban Dictionary cited, Y-O could be your or it could be just an interjection of emotion. I'm going over to his house to get some food. Y-O. I mean, it can be anything. To make the leap that somebody whose primary language is Polish understands this acronym that was interjected by an officer without any explanation as to what it meant somehow changes his intent and now makes him understand, Mr. Gautier understand, that it involves a minor, it is clearly wrong. I mean, the officers, it's their testimony and what they've argued is what their context and understanding of what their message is and what their conversations meant. It wasn't anything about what Mr. Gautier understood or understood what it to mean. They were playing roles all day. They knew their roles. When they were saying Y-O, they knew that they meant year old. Nobody else did. Mr. Gautier didn't. He responded to who met. Well, give me another reasonable explanation for 14 and 15. Just those numbers when he's looking for 18. It could be the amount of girls. It could be anything or it could be something that he just glossed over because then when he gets there, unbeknownst to any reason to ask it, the officer in the hotel room asks him, do you still want both for 150? Both means multiple girls, any number of girls, and he was only going there as he responded for one girl of whom met. So then again now, based on that, it's just officers' context and understanding of what these things meant that the trial court found Mr. Gautier guilty on. Not Mr. Gautier's understanding, and that's what had to be proved beyond a reasonable doubt, is that he understood that somehow this ad was transformed into an instance involving minors by the use of the acronym Y-O. Any other questions? All right, thank you very much. Thank you, Your Honor. All right, I want to thank both counsel for the quality of the arguments here this afternoon. The matter will, of course, be taken under advisement, and the Court will issue a written decision in due course. We will stand in recess for a few moments to prepare for the next case. Thank you.